**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————————

No. 24-10900

————————————————

THOMAS O'NEAL,

*Plaintiff-Counter Defendant-Appellant,*

*versus*

AMERICAN SHAMAN FRANCHISE SYSTEMS, INC.,

CBD AMERICAN SHAMAN, LLC,

SHAMAN BOTANICALS, LLC,

SVS ENTERPRISES, LLC,
  a Kansas limited liability company,
STEVEN VINCENT SANDERS, II,
  an individual, et al.,

*Defendants-Counter Claimants-Appellees,*

FLORIDA SHAMAN PROPERTIES, LLC et al.,

*Defendants.*

———————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:20-cv-00936-KKM-AAS

———————————————

Before ROSENBAUM, GRANT, and BRASHER, Circuit Judges.

BRASHER, Circuit Judge:

We have held that a settlement agreement bars litigation of wage-and-hour claims under the Fair Labor Standards Act only if the settlement was approved by a court or the Department of Labor. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982). In this appeal, we must now decide how this rule applies when FLSA claims are settled alongside non-FLSA claims. After Thomas O'Neal sued American Shaman on several legal theories, including the FLSA, he signed a settlement agreement that released "any and all" claims in return for several thousand dollars. Neither a court nor the Department of Labor approved the settlement. So, when O'Neal later sued American Shaman again—this time, for fraudulent transfer—he argued that American Shaman could not enforce the release. The district court rejected this position and dismissed O'Neal's new complaint.

We believe that, because of the settlement agreement, the district court correctly dismissed O'Neal's fraudulent transfer claims. Our interpretation of the FLSA in *Lynn's Food* does not impose a federal-law impediment to the release of non-FLSA claims. It is true that the parties' failure to secure preapproval for their settlement means the settlement cannot bar litigation of O'Neal's

FLSA claims. But the enforceability of the release as to non-FLSA claims is a matter of state contract law, not federal FLSA law. Because the release is enforceable as a matter of Florida contract law, it bars O'Neal's fraudulent transfer claims. For this reason, among others discussed below, we affirm.

## I.

A convoluted web of litigation underpins this appeal. To simplify the background relevant here, we discuss the underlying facts in three sections below: (A) the initial litigation and the resulting settlement agreement; (B) Thomas O'Neal's supplemental complaint and American Shaman's counterclaims; and (C) the district court's disposition of the supplemental complaint and counterclaims, and the magistrate judge's disposition of O'Neal's motion to amend the supplemental complaint.

### A.

At its core, this appeal centers around two parties: the American Shaman CBD franchise and O'Neal, a franchisee. In early 2020, O'Neal sued American Shaman, alleging breach of contract, unjust enrichment, violation of several Florida statutes, and a host of FLSA violations.

Roughly a year after O'Neal filed this complaint, the parties reached a settlement agreement via email. The parties then filed a joint notice that they "have resolved [the] [p]laintiff's claims" and "are in the process of drafting a confidential agreement to memorialize that resolution." Doc. 65 at 1. American Shaman then issued

a set of financial disclosure documents, and the parties submitted a joint stipulation of voluntary dismissal. Under the settlement agreement, O'Neal received $50,000.

The settlement agreement contains a mutual release provision. The mutual release states, in relevant part, that the parties "release" each other "from any and all '[c]laims.'" Doc. 180-1 at 2. And the release defines claims as "any and all past, present or future claims, demands, obligations, actions, [or] causes of action." *Id.* at 3.

The agreement also contains a confidentiality provision. This provision states that "all terms of the settlement and this document will be held in strict confidence by all parties to this action." *Id.* It continues: "[t]he parties . . . agree to keep the terms of this settlement in confidence and not to publish [the terms] . . . in the absence of a court order compelling them to do so and not without prior written notice to the other parties' attorneys." *Id.* at 3–4. And, further, the provision stresses that "[a]ll parties acknowledge that this requirement of confidentiality is a material term of the [settlement agreement] and that any failure to . . . comply with the confidentiality requirement may subject the offending party to legal damages, including sanctions." *Id.* at 4. But the provision clarifies, in part, that "all parties may be allowed to disclose the terms of this settlement to a court in order to obtain an order seeking enforcement of the settlement." *Id.*

*B.*

A few months after signing the settlement agreement, O'Neal initiated an entirely separate action in the Western District of Missouri. To that end, O'Neal served subpoenas on American Shaman and sought documents related to potential fraudulent transfer claims against American Shaman. O'Neal argued that these claims were not barred by the mutual release. In response, American Shaman provided a heavily redacted copy of the settlement agreement.

O'Neal then filed an amended supplemental complaint in the original litigation—the litigation that underlies this appeal. In this complaint, O'Neal alleges that American Shaman is liable for fraudulent transfer, conversion, and more, but he did not allege any FLSA claims. When filing the supplemental complaint, O'Neal did not attach the settlement agreement or describe its contents.

American Shaman responded to this supplemental complaint by moving for a judgment on the pleadings. In support of this motion, American Shaman argued that O'Neal's claims are "barred as a matter of law by the [mutual] release included in a settlement agreement between the parties." Doc. 184 at 1.

American Shaman also filed counterclaims against O'Neal for, among other things, breach of contract. Specifically, American Shaman argued that O'Neal breached the mutual release provision when he brought supplemental proceedings against American Shaman. And American Shaman requested that the district court "make a finding that O'Neal and his counsel have acted in bad

faith . . . and order them . . . to pay the attorneys' fees." Doc. 188 at 32.

## C.

The district court granted American Shaman's motion for judgment on the pleadings as to the supplemental complaint. The court explained that, under *Lynn's Food*, settlement agreements for FLSA claims must be approved by the Department of Labor or a district court. Because the parties' settlement agreement here was approved by neither, the court determined that the mutual release is unenforceable as to O'Neal's FLSA claims. But O'Neal did not include those claims in his supplemental complaint, and the district court decided that the release *is* enforceable as to his non-FLSA claims. As the court put it, "there is no statutory reason to think the FLSA protects non-FLSA claims simply because they are included in a joint settlement," and O'Neal "identifie[d] no caselaw extending the" FLSA's protections "to non-FLSA claims." Doc. 230 at 5. Instead, settlements of non-FLSA claims are governed by simple contract law.

The following month, O'Neal filed a motion to amend his supplemental complaint to, among other things, "attach a copy of the contract memorializing the fraudulent transfer that had recently been obtained in discovery conducted in the [Western District of Missouri] and allege an additional cause of action for rescission of the Settlement Agreement." Appellant's Br. at 7–8. In support of this latter rescission claim, O'Neal contended that he would have rejected the mutual release in the initial settlement agreement

had American Shaman not fraudulently misrepresented relevant interests in their financial disclosure documents. O'Neal also filed a motion to amend his answer and affirmative defenses to the counterclaims. About five months later, O'Neal withdrew both motions and filed a substitute motion to amend his supplemental complaint and his affirmative defenses.

The magistrate judge denied this substitute motion. He explained that O'Neal's rescission claim suffers from a "factual quandary": namely, that the parties noticed the settlement agreement with the court on April 21, 2021—"nine days before the issuance of the financial disclosure documents" that O'Neal claims he relied on when he entered into the settlement agreement. Doc. 273 at 8. Further, nothing in O'Neal's "motion or attached proposed amended supplemental complaint indicated" that he "actually returned or made a legible offer to return the $50,000 he received as part of the" settlement agreement. *Id.* at 9–10. Because a party's right to rescind is waived if he retains the benefits of a contract after discovering the grounds for rescission, O'Neal "did not adequately plead his claim of rescission." *Id.* at 10.

The magistrate judge also stated that O'Neal's new causes of action and affirmative defenses "appear to be an attempt at maneuvering around the court's order granting" American Shaman judgment on the pleadings. *Id.* at 11. O'Neal "at no point explain[ed] why he raises these new causes of action and affirmative defenses now, over a year and half" after entering into the settlement agreement "and nearly a year after filing a supplemental

complaint challenging [it] on other grounds." *Id.* at 11–12. The magistrate judge determined that this delay "raises at least the specter of undue delay, bad faith, and dilatory motive." *Id.* at 12.

Five days after the magistrate judge denied his substitute motion, O'Neal filed a motion for reconsideration. The magistrate judge denied this motion for reconsideration.

Later, the parties filed cross-motions for summary judgment on American Shaman's counterclaims. As relevant here, American Shaman argued that O'Neal breached the settlement agreement's mutual release "by filing his supplemental complaint" against American Shaman. Doc. 390 at 3. O'Neal argued in turn that American Shaman's breach of contract claim is barred because American Shaman breached the confidentiality provision when it filed a redacted copy of the settlement agreement in a related action in the Western District of Missouri without providing him "prior written notice."

The district court granted summary judgment to American Shaman as to its breach of contract claim. In doing so, the district court adopted the magistrate judge's finding that O'Neal "breached the [s]ettlement [a]greement's . . . broad release with his filings." Doc. 410 at 18.

The district court likewise rejected O'Neal's argument that American Shaman breached the confidentiality provision. The court explained that "the general clause of the confidentiality provision requires a court order and prior written notice," but the specific clause "allows parties to disclose to a court to obtain an order

seeking enforcement without satisfying the general clause's procedural requirements." Doc. 415 at 18. And the court further noted that the specific clause is "expressly offset with the phrase '[b]y way of clarification, however'" and that it provides that "all parties may be allowed to disclose the terms of this settlement to a court in order to obtain an order seeking enforcement of the settlement." *Id.* at 16–17. As the court put it, "[t]he ordinary meaning of this language, taken in context, is a limited exception for certain disclosures to the general clause's more rigorous procedural requirements." *Id.*

O'Neal appealed.

## II.

O'Neal argues that the district court erred in granting American Shaman a judgment on the pleadings as to O'Neal's supplemental complaint and in granting American Shaman summary judgment on its counterclaims. We discuss each issue in turn.

### A.

O'Neal objects to the district court's disposition of his supplemental complaint in two respects. First, he argues that the district court was wrong to determine that the mutual release was enforceable and to grant judgment on the pleadings. O'Neal contends that, under *Lynn's Food*, the Department of Labor or a district court must approve any settlement that contains FLSA claims. Because there was no such approval here, he argues that the entire settlement agreement is unenforceable. Second, O'Neal argues that the

court should have granted leave to amend his supplemental complaint to add a claim asking for rescission of the settlement agreement. Specifically, he says that, if he had been allowed to amend, he could have established in an amended supplemental complaint that he was fraudulently induced into settling his claims.

Both of O'Neal's arguments fail. First, our interpretation of the FLSA in *Lynn's Food* governs settled FLSA claims. But the question whether the release in a settlement agreement bars non-FLSA claims must be answered by state law, not the FLSA. Second, because O'Neal waived his right to appeal the magistrate judge's denial of his motion to amend, we cannot address this issue. We take each issue in turn.

1.

We begin with O'Neal's *Lynn's Food* argument, which we review *de novo*. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014). Congress passed the FLSA to protect workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 739 (1981). Specifically, the FLSA creates the right to a minimum wage and "time-and-a-half" overtime pay when covered employees work over forty hours a week. 29 U.S.C. §§ 206, 207(a)(1). Accordingly, the quintessential FLSA claim seeks back wages. *See, e.g.*, *Nall v. Mal-Motels, Inc.*, 723 F.3d 1304 (11th Cir. 2013) (back wages); *Niland v. Delta Recycling Corp.*, 377 F.3d 1244 (11th Cir. 2004) (same); *Patel v. Quality Inn S.*, 846 F.2d 700 (11th Cir. 1988) (same).

As relevant here, we held in *Lynn's Food* that "[t]here are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees." 679 F.2d at 1352. "First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them." *Id.* at 1353. Should an employee accept such a payment supervised by the Secretary, he would "thereby waiv[e] his right to bring suit for both the unpaid wages and for liquidated damages, provided the employer pays in full for the back wages." *Id.* Second, "[w]hen employees bring a private action for back wages under the FLSA" and present a proposed settlement to the district court, the court "may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.* When an employee purports to settle FLSA claims without going through either process, the employee cannot be barred from litigating those claims based on the settlement. *Id.* at 1353–54.

Our holding in *Lynn's Food* draws on the FLSA itself. The FLSA preempts any contrary contract terms that might be negotiated between an employee and an employer. As we put it in *Lynn's Food*, "Congress made the FLSA's provisions mandatory" because it recognized that "there are often great inequalities in bargaining power between employers and employees." *Id.* at 1352. As a result, the provisions cannot be negotiated or bargained away—*ex ante* or *ex post*. *Id.* (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). If they were subject to negotiation or compromise, it would "'nullify the purposes' of the statute and thwart the

legislative policies it was designed to effectuate." *Id.* (quoting *Barrentine*, 450 U.S. at 740).

In short, because the FLSA's protections cannot be *ex post* bargained away, an agreement that purports to release FLSA claims cannot be enforced as a matter of federal law unless it was approved by the Department of Labor or a court. *See D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 116 (1946). Here, there was no such oversight or approval of O'Neal's attempt to release his FLSA claims. As a result, all agree that the release in the settlement agreement is unenforceable as to O'Neal's FLSA claims.

But none of this federal law—neither the text of the FLSA nor our caselaw interpreting it—controls whether the release in the settlement agreement forecloses O'Neal from litigating his state-law fraudulent transfer claim. The FLSA does not protect, and was not intended to protect, every claim that an employee may bring against his employer. Instead, Congress set aside a particular category of statutory rights, namely those concerning "substandard wages and oppressive working hours," for protection against being bargained away. *Barrentine*, 450 U.S. at 739.

For all other claims settled between an employee and his employer, standard contract law governs the interpretation of a settlement agreement. *Hayes v. Nat'l Serv. Indus.*, 196 F.3d 1252, 1254 (11th Cir. 1999) ("In general, the law of contracts governs the construction and enforcement of settlement agreements."). It is possible that, *as a matter of contract law*, the unenforceability of a release as to FLSA claims might impact the enforceability of the release as

to non-FLSA claims. For example, if the only consideration one side provided was the settlement of the FLSA claims, then a release might be unenforceable for lack of consideration. *Glob. Travel Mktg., Inc. v. Shea*, 908 So.2d 392, 398 (Fla. 2005) (listing, "violation of the law or public policy, unconscionability, or lack of consideration" as "defenses to contract enforcement"). Likewise, it is possible that the parties' error in thinking that they were settling FLSA claims could reflect a mutual mistake that would render a release unenforceable. *Continental Assurance Co. v. Carroll*, 485 So.2d 406, 409 n.2 (Fla. 1986) (noting that, under Florida law, "mutual mistake of fact constitutes an equitable ground for recission").

As the district court explained, nothing in Florida contract law precludes enforcement of the settlement agreement here. The settlement agreement's mutual release doesn't distinguish between FLSA and non-FLSA claims, so settling the FLSA claims is not the "essence" of the agreement. And, as the district court correctly noted, there exists something of value—*i.e.*, "valid legal obligations"—apart from the FLSA claims on both sides: American Shaman received the release of all non-FLSA claims and O'Neal received $50,000. As a result, even though the mutual release is unenforceable to prohibit litigation of O'Neal's settled FLSA claims, it remains enforceable as to other claims, including the fraudulent transfer claim in the supplemental complaint.

In holding that the settlement agreement bars O'Neal's fraudulent transfer claim, we do not address how a district court should evaluate the fairness of a proposed settlement agreement

that resolves both FLSA and non-FLSA claims. District courts will face these questions regularly. Indeed, "[a]s a practical matter, we recognize that employers are unlikely to settle FLSA claims separately from parallel state law claims in the same action." *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 607 n.12 (2d Cir. 2020); *see also Rosell v. VSMB, LLC*, 67 F.4th 1141, 1143 n.1 (11th Cir. 2023). This appeal does not present a question about how a district court should proceed when faced with approving such a settlement agreement. We therefore leave to another day how best to approach such mixed settlements under *Lynn's Food*.

Instead, we simply hold that a settlement agreement resolving both non-FLSA and FLSA claims is enforceable as to the non-FLSA claims insofar as it satisfies contract law and is enforceable as to the FLSA claims insofar as it satisfies contract law and the FLSA's separate requirements. Because this mutual release remains enforceable as to O'Neal's non-FLSA claims, the district court did not err in granting American Shaman a judgment on the pleadings as to the non-FLSA claims in the supplemental complaint.

2.

We turn, then, to O'Neal's argument that the district court should have granted him leave to amend the supplemental complaint.

We have long held that, when "a party fails to timely challenge a magistrate's nondispositive order before the district court, the party *waived* his right to appeal those orders in this Court." *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007)

(emphasis added). This rule of waiver stems from Federal Rule of Civil Procedure 72(a), which grants a party fourteen days to object to a magistrate judge's nondispositive order to the district judge. *See Farrow v. West*, 320 F.3d 1235, 1248 n. 21 (11th Cir. 2003); *Maynard v. Bd. of Regents*, 342 F.3d 1281, 1286 (11th Cir. 2003). The rule also provides that "[a] party may not assign as error a defect in the order not timely objected to." Fed. R. Civ. P. 72(a). In sum, because Federal Rule of Civil Procedure 72(a) governs in this civil case and because our precedents interpreting that Rule treat a party's failure to object as a non-jurisdictional waiver problem, we must do the same. *See also Auto. Alignment & Body Serv., Inc. v. State Farm Mut. Auto. Ins.*, 953 F.3d 707, 722–23 (11th Cir. 2020) (explaining that, under the Supreme Court's recent jurisprudence, court-made rules are "nonjurisdictional claim-processing rules").

Alongside these civil precedents, we also have a line of *criminal* cases that suggest the failure to object to a magistrate judge's order poses a jurisdictional, rather than a waiver, problem on appeal. This line of precedents started in *United States v. Renfro*, 620 F.2d 497, 500 (5th Cir. 1980). There, the old Fifth Circuit reasoned that, because the failure to object deprived the district court of an opportunity to "effectively review the magistrate's holding," any appeal from that order was effectively an appeal directly from the magistrate judge. *Id.* And, because "[t]he law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates," the *Renfro* court said that it lacked jurisdiction. *Id.*

Our *Renfro* rule has never been applied in a civil appeal like this one. We have relied on *Renfro* only twice since 1980, in *United States v. Schultz*, 565 F.3d 1353, 1362 (11th Cir. 2009), and *United States v. Brown*, 342 F.3d 1245, 1246 (11th Cir. 2003). And, in both *Schultz* and *Brown*, we applied it in the criminal context.

Although there is some arguable inconsistency between *Renfro*'s criminal rule (which came first in time) and our line of precedents applying Rule of Civil Procedure 72(a), we cannot lightly infer a conflict in our precedents. Instead, we are obligated to, "if at all possible, distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993). *See Edwards v. U.S. Attorney General*, 97 F.4th 725, 736 (11th Cir. 2024) (noting that this Court has "a duty to reconcile, where possible, prior precedents that appear to be in tension"). We can easily distill a unified rule here. Because *Renfro* has never been applied in a civil case, has nothing to say about Federal Rule of Civil Procedure 72(a), and has no bearing on civil litigation in general, we hold, even if *Renfro* controls in criminal cases, our on-point precedents based on Rule 72(a) control in civil appeals like this one.

With that said, we also note that it is not entirely clear that *Renfro* remains good law even as to the criminal cases where it could control. In *United States v. Brown*—which is the only time we have meaningfully discussed *Renfro*—we suggested that the *Renfro* rule was about to be superseded by a then-pending addition to the Federal Rules of *Criminal* Procedure. 342 F.3d at 1246 n.2. Likewise,

in a concurring opinion in *Brown*, Judge Carnes argued that *Renfro* did not warrant reconsideration en banc because "this very matter is on the way to resolution in the Rules Enabling Act process." *Id.* at 1248 (Carnes, J., concurring). The proposed rule, Federal Rule of Criminal Procedure 59, has since been formally adopted. *See also* 11th Cir. R. 3-1 ("A party failing to object to a magistrate judge's [order] waives the right to challenge on appeal the district court's order" accepting it). Although we need not determine here whether *Renfro* has been superseded by this new rule, our discussion in *Brown* confirms our determination today that *Renfro*—although earlier in time—does not trump our on-point civil precedents about Rule 72(a).

Applying these civil precedents, we determine that O'Neal waived his right to appeal the magistrate judge's denial of his motion to amend by failing to object to the district judge. The magistrate judge's denial order was a nondispositive order. *Smith v. Marcus & Millichap, Inc.*, 106 F.4th 1091, 1099–1100 (11th Cir. 2024) (treating a magistrate's denial of a motion to amend as a nondispositive order, even when that denial was based on the futility of the arguments in the proposed amended complaint); *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 595 (7th Cir. 2006) ("The district judge correctly held that the magistrate judge's denial of Hall's motion to amend his complaint was nondispositive . . . ."). And O'Neal did not file an "objection" or otherwise seek a ruling from the district judge on the magistrate judge's order. *Smith*, 487 F.3d at 1365.

O'Neal argues that his timely motion for reconsideration was an "objection" to the order. But we disagree. We have previously held that a motion for reconsideration is not the equivalent of an objection under Rule 72. *Id.* ("Smith did not object to that order, but rather, he filed a motion for reconsideration . . ."). And nothing about O'Neal's motion called the magistrate judge's order to the attention of the district judge. O'Neal's motion expressly asked the magistrate judge to reconsider its prior order under Federal Rules of Civil Procedure 59 and 60; it did not seek a ruling from the district judge under Rule 72. Because O'Neal did not preserve his right to appeal by objecting to the district judge, he has waived any objection to the denial of his motion to amend.

⋆     ⋆     ⋆

Because the district court correctly enforced the settlement to bar O'Neal's state law claims and because O'Neal waived his objection to the magistrate judge's order denying his motion to amend the complaint, we affirm the district court's grant of judgment on the pleadings.

B.

We now review the district court's summary judgment on American Shaman's counterclaims. As ever, we review the district court's grant of summary judgment *de novo*. *Boigris v. EWC P&T, LLC*, 7 F.4th 1079, 1084 (11th Cir. 2021).

O'Neal argues that American Shaman breached the confidentiality provision of the settlement agreement when it failed to

provide "prior written notice" to him before disclosing the agreement's content to the Western District of Missouri in related litigation. This alleged breach occurred three weeks before O'Neal filed his supplemental proceedings. O'Neal argues, based on American Shaman's purported breach, that he is "relieve[d]" of "any duties [he] had." Appellant's Br. at 44–45. Therefore, O'Neal contends that the district court erred in granting American Shaman summary judgment based on O'Neal's alleged breach of the mutual release agreement.

This argument fails. The confidentiality provision that O'Neal relies on does not require that "prior written notice" be given when a party is "disclos[ing] the terms of th[e] settlement to a court in order to obtain . . . enforcement." Doc. 180-1 at 4. Instead, the confidentiality provision contains a general clause and a specific clause. The general clause forbids the parties from disclosing the terms of the settlement agreement (1) "in the absence of a court order compelling them to do so" and (2) "without prior written notice to the other parties' attorneys." Doc. 180-1 at 3–4. The specific clause provides an exception, however: "By way of clarification . . . all parties may be allowed to disclose the terms of this settlement to a court in order to obtain . . . enforcement." *Id.* at 4.

Under Florida law, "it is a general principle of contract interpretation that a specific provision dealing with a particular subject will control over a different provision dealing only generally with that same subject." *Idearc Media Corp. v. M.R. Friedman & G.A. Friedman, P.A.*, 985 So. 2d 1159, 1161 (Fla. Dist. Ct. App. 2008) (quotation

omitted); *See also Island Manor Apartments of Marco Island, Inc. v. Div. of Fla. Land Sales, Condos. & Mobile Homes*, 515 So. 2d 1327, 1330 (Fla. Dist. Ct. App. 1987).

Here, the specific clause is best understood as casting off the general clause's two requirements when its one delineated condition—disclosing the agreement to a court to obtain enforcement—is satisfied. Take the general clause's first requirement, for instance. It would defy reason to demand that there be a "court order *compelling*" a party to disclose the settlement agreement when the specific clause grants parties the *discretion* to "disclose the terms of th[e] settlement to a court." Doc. 180-1 at 4. And it is likewise clear that the general clause's requirement that "a court order compel[]" disclosure contemplates that the court moves first; by contrast, the specific clause clearly contemplates that the disclosing party moves first—it is the party, after all, that "disclose[s] the terms of th[e] settlement to a court." *Id.*

Further, there's a superfluity problem with O'Neal's argument. Reading the specific clause to mean that "parties may be allowed to disclose the terms of th[e] settlement to a court in order to obtain . . . enforcement"—but only in response to "a court order compelling" disclosure and with prior written notice—renders the specific clause pointless. That conduct is already permitted by the general clause. For all the reasons it would be illogical to apply the general clause's first requirement (a court order compelling disclosure) to the specific clause, so too is it illogical to apply its second requirement (prior written notice). That's because the two

conditions are joined by the word "and," and therefore run together, or not at all. Thus, there is no "prior written notice" requirement when a party does what American Shaman did here: "disclose the terms of th[e] settlement to a court . . . to obtain . . . enforcement." *Id.*

As a result, O'Neal's argument that American Shaman's conduct relieved him of his duties fails. American Shaman was not required to provide him with "prior written notice" before disclosing the agreement's content to the Western District of Missouri under the agreement's specific clause. And because O'Neal was not relieved of his duties under the settlement agreement, the district court was correct to grant American Shaman summary judgment on its counterclaim.

**III.**

For the foregoing reasons, the district court is **AFFIRMED**.

24-10900            ROSENBAUM, J., Concurring            1

ROSENBAUM, Circuit Judge, Concurring:

I join Sections I, II.A.1, II.B, and III of the Court's opinion and concur only in the judgment as to Section II.A.2. I write separately primarily to make clear an important limit to our decision. And while it makes no difference to the ultimate outcome, the Majority Opinion's conclusion that we have jurisdiction over O'Neal's appeal of his denied motion for leave to amend his complaint conflicts with binding precedent. Because complying with the prior-precedent rule is not optional, I respectfully dissent from Section II.A.2's analysis.

The main thrust of our decision addresses the consequences in later litigation of the parties' settlement agreement from earlier litigation. That settlement agreement purported to settle both Fair Labor Standards Act ("FLSA") and non-FLSA claims without court review. Then, in that earlier litigation, the district court recognized a stipulated dismissal with prejudice based on the settlement agreement. That was error. But we cannot reverse that mistake in this appeal.

So I write to avoid any mistaken impression that the Majority Opinion's silence on this error might somehow suggest condonation. Recognizing a stipulated dismissal without court review and acceptance of the underlying settlement in an action that includes FLSA claims violates the FLSA, our precedent, and Rule 41, Fed. R. Civ. P. It also creates confusion and unnecessary additional litigation. Our courts are busy, and litigation is expensive for

2                    ROSENBAUM, J., Concurring                    24-10900

parties.  For those reasons, in my view, it's worth discussing this error further in an effort to try to help courts avoid it in future cases.

The FLSA "forbid[s] waiver of basic minimum and overtime wages" or the "employee's right to liquidated damages" under the Act.  *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 704, 707 (1945). That's so, even when parties settle a "bona fide dispute" over coverage.  *D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 117 (1946).

To ensure that employers honor that prohibition, we've specified the only way parties may validly settle or compromise a worker's FLSA claims for back wages once an employee files a claim in court.[1]  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982).  In that situation, parties must submit to the court a proposed settlement for the district court to review and approve for fairness and reasonableness.  *Id.* at 1353.  If the district court approves, it can enter the settlement as a stipulated judgment under Rule 41(a)(2), Fed. R. Civ. P.  *Id.* at 1355.  But the law does not permit settlements and stipulations of dismissal without court approval under Rule 41(a)(1)(A).  And when district courts mistakenly authorize FLSA back-wage settlements under Rule 41(a)(1)(A) without court review and approval, they risk an

---

[1] Parties may always agree to payments supervised by the Secretary of Labor. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982). But if parties are going to do so, that often happens without litigation.

employee's practical loss of their earned wages, in frustration of the FLSA—not to mention additional litigation.

In Section I of this concurrence, I divide my discussion of the FLSA issues in this case into three substantive parts. Part A briefly reviews governing Supreme Court and Eleventh Circuit precedent on FLSA-claims settlements. Part B shows how the governing precedent necessarily demands that the dismissal of actions involving FLSA claims proceed under Rule 41(a)(2), with court review and approval—not under Rule 41(a)(1)(A), without it. And Part C describes how what happened here violates our precedent and the FLSA—and can create confusion and additional litigation.

In Section II, I explain why binding precedent in our Circuit deprives the Court of jurisdiction to review the magistrate judge's denial of O'Neal's motion for leave to amend his complaint—a nondispositive order to which O'Neal didn't timely object.

## I.

### A.

The FLSA has a long judicial pedigree. For nearly 90 years, it has served as a bedrock law "protecting workers from substandard wages and oppressive working hours," with guarantees like the minimum wage and added pay for overtime work. *Lynn's Food*, 679 F.2d at 1352.

The Supreme Court has instructed us that "Congress made the FLSA's provisions mandatory" because of the "often great inequalities in bargaining power" between employers and employees.

*Id.* As I've noted, the Court held in *Brooklyn Savings Bank v. O'Neil* that the FLSA "forbid[s] waiver of basic minimum and overtime wages" or the "employee's right to liquidated damages" under the Act. 324 U.S. 697, 704, 707 (1945). *Brooklyn Savings* reserved the question of whether parties could settle a "bona fide dispute between the parties as to liability." *Id.* at 714. The next year, the Court gave a partial answer, extending *Brooklyn Savings* to prohibit waiving FLSA wage claims even when settling a "bona fide dispute" over coverage. *See D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 117 (1946).

Still, *Brooklyn Savings* and *Gangi* left lower courts with two key unresolved questions. First, they did not opine on whether an employee might validly settle or waive his FLSA wage claims through a court-approved stipulated judgment. *Id.* at 113 n.8. Second, *Gangi* reserved "the possibility of compromises in other situations which may arise, such as a dispute over the number of hours worked or the regular rate of employment." *Id.* at 114–15.

We filled in the rest of the picture. *Lynn's Food* spells out the only two ways to validly settle or compromise a worker's FLSA claims for back wages. *See Lynn's Food*, 679 F.2d at 1355. First, an employer can pay back wages under the supervision of the Secretary of Labor, and the employee can accept that payment. *Id.* at 1353. Second, if the employee sues the employer, the parties can submit a joint proposed settlement for the district court to review for fairness and reasonableness, and have the court enter the settlement as a stipulated judgment. *Id.* at 1355. That's it.

24-10900          ROSENBAUM, J., Concurring                    5

We've reaffirmed and extended *Lynn's Food* since then.  *See Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1305, 1307–08 (11th Cir. 2013) (clarifying that *Lynn's Food* applies to former employees and applying the doctrine to a dispute over the number of hours worked). Many other courts have joined us.  Indeed, *Lynn's Food* provides the majority rule nationally.  *See* Lonny Hoffman & Christian J. Ward, *The Limits of Comprehensive Peace: The Example of the FLSA*, 38 Berkeley J. Emp. & Lab. L. 265, 278 (2017); *Kraus v. PA Fit II, LLC*, 155 F. Supp. 3d 516, 529 (E.D. Pa. 2016) (collecting appellate decisions from the Second, Fourth, Seventh, Eighth, and Ninth Circuits).

The bottom-line message is clear.  Workers' FLSA back-wage rights are "not subject to negotiation or bargaining between employers and employees." *Lynn's Food*, 679 F.2d at 1352.  And an employer can't "escape liability" under the FLSA by asking an employee to sign away her right to back wages after they've accrued. *Nall*, 723 F.3d at 1307.

**B.**

To recap, governing precedent holds that, in the context of litigation, parties may settle FLSA back-wage claims only with the court's review and approval of the settlement.  This fact limits a plaintiff's voluntary-dismissal options under the Federal Rules of Civil Procedure.

6                    Rosenbaum, J., Concurring                24-10900

Rule 41(a) identifies voluntary-dismissal procedural options. Rule 41(a)(1) allows parties to dismiss an action[2] without a court order or even court review.  Parties may use that procedure in only two circumstances.  A plaintiff can file a unilateral notice of dismissal—but only before the defendant has answered or moved for summary judgment.  Fed. R. Civ. P. 41(a)(1)(A)(i).  Or all parties who've appeared can stipulate to dismiss the action at any point. Fed. R. Civ. P. 41(a)(1)(A)(ii).  A valid Rule 41(a)(1)(A) filing takes effect automatically and divests the district court of jurisdiction over the action.  *See Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1277 (11th Cir. 2012).

Still, parties who wish to voluntarily dismiss an action can't employ the Rule 41(a)(1) procedure in every case.  Rather, Rule 41(a)(1) makes the availability of its procedures "[s]ubject to . . . any applicable federal statute."  Fed. R. Civ. P. 41(a)(1)(A).  So parties can't use the Rule 41(a)(1) procedure if an "applicable federal statute" prohibits its use.

The best reading of that phrase—"applicable federal statute"—and our precedent shows that the FLSA is an "applicable federal statute" that conditions parties' ability to voluntarily dismiss a case without the court's leave.  *See* Fed. R. Civ. P. 41(a)(1)(A).  As I've mentioned, *Lynn's Food* flatly prohibits FLSA litigants from

---

[2] To be effective, a Rule 41(a)(1) notice must dismiss an action as a whole, not a subset of its claims.  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1106 (11th Cir. 2004).  But it can do so against a single defendant, a subset of defendants, or all defendants.  *Id.*

settling FLSA claims based on an unreviewed, out-of-court settlement. *Lynn's Food*, 679 F.2d at 1355. Rather, the district court must first review any proposed settlement of an FLSA back-wage action for fairness and reasonableness and then, only if the court is satisfied, enter the settlement as a stipulated judgment. *Id.*

But the Rule 41(a)(1) voluntary-dismissal procedure contemplates only dismissal "without a court order" and without court review of any settlement agreement. *See* Fed. R. Civ. P. 41(a)(1)(A). Plus, parties can use Rule 41(a)(1) to stipulate to dismiss a case with prejudice. *See* Fed. R. Civ. P. 41(a)(1)(B); *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 934 (11th Cir. 1987). And a plaintiff may not later reassert a claim that a court validly dismissed with prejudice, including based on a stipulation. *See Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1501–02 (11th Cir. 1990). So dismissing an action with FLSA claims with prejudice under Rule 41(a)(1) would allow a result that *Lynn's Food* forbids—permanently compromising an employee's FLSA back-wage claims through an unreviewed, private settlement.

For that reason, the FLSA is necessarily an "applicable federal statute" to which Rule 41(a)(1) is "[s]ubject." *See* Fed. R. Civ. P. 41(a)(1)(A); *see also Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015) (reaching that same conclusion, based on its understanding of *Lynn's Food*). And as a result, Rule 41(a)(1)'s own terms mean that, under *Lynn's Food*, litigants may not use that

8                 ROSENBAUM, J., Concurring                24-10900

procedure to voluntarily dismiss an action that includes FLSA back-wage claims. [3]

Instead, Rule 41(a)(2) spells out the mechanism by which parties may seek to voluntarily dismiss an FLSA back-wage action. By its terms, Rule 41(a)(2) governs all efforts to voluntarily dismiss an action that is not subject to Rule 41(a)(1). *See* Fed. R. Civ. P. 41(a)(2) ("Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."). And Rule 41(a)(2) expressly conditions voluntary dismissal on the court's "order, on terms that the court considers proper." *Id.*

In short, then, under our *Lynn's Food* line of caselaw, district courts are obligated to strike as invalid any filing that purports to voluntarily dismiss an FLSA back-wage action under Rule 41(a)(1).

*Anago Franchising* does not support a different answer. To be sure, that case holds that a Rule 41(a)(1)(A)(ii) stipulation "is self-executing and dismisses the case upon filing." *Anago Franchising*, 677 F.3d at 1277. But that holding applies to only a *valid* Rule 41(a)(1)(A)(ii) stipulation. Indeed, *Anago Franchising* begins its discussion of Rule 41(a)(1)(A)(ii) by noting that the Rule's effect applies only "subject to certain rules inapplicable here." *Id.* That's a

---

[3] I discuss only dismissals with prejudice above. But at least one court has reasoned that, "[a]s a matter of grammar and structure, the exception to automatic dismissal for 'any applicable federal statute' in [Rule 41(a)(1)](A) applies equally" to all Rule 41(a)(1)(A) dismissals—whether with or without prejudice. *See Samake v. Thunder Lube, Inc.*, 24 F.4th 804, 810 (2d Cir. 2022).

clear reference to Rule 41(a)(1)(A)'s limitation that makes it "[s]ubject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute." Fed. R. Civ. P. 41(a)(1)(A). Because *Anago Franchising* expressly limits its holding to stipulations that don't involve actions under an "applicable federal statute," it doesn't apply to actions that do involve an "applicable federal statute" like the FLSA.

## C.

With that understanding of the governing law, I turn to what happened in the proceedings here. These proceedings show how purported dismissals of FLSA back-wage claims under Rule 41(a)(1) can frustrate the FLSA and create confusion and additional litigation.

The parties' dispute has involved two phases of litigation in the Middle District of Florida. In the first phase—what I'll call the "Initial Litigation"—Thomas O'Neal sued CBD American Shaman, LLC ("American Shaman"), and related parties in April 2020. He made FLSA claims and non-FLSA claims.

About a year later, in May 2021, two key events occurred in that lawsuit. Only the first relates directly to the issues we had to decide in this appeal: O'Neal and three of the defendants in the Initial Litigation signed a settlement agreement ("Settlement Agreement"). Among other things, the Settlement Agreement purported to release all claims O'Neal had against those three defendants, including his FLSA claims. As the Majority Opinion explains, "the release in the [S]ettlement [A]greement is unenforceable as to O'Neal's FLSA claims." Maj. Op. at 12. But that's not the case as

to O'Neal's non-FLSA claims.  Because the Settlement Agreement was valid and segregable as it related to those claims—and O'Neal sought to pursue only his non-FLSA claims anew in what I'll call the "Supplemental Litigation"—the Majority Opinion correctly affirms the district court's dismissal of O'Neal's new complaint.

Now we get to the second event of the Initial Litigation: O'Neal and the three defendants jointly stipulated to the voluntary dismissal with prejudice of the Initial Litigation based on their settlement.  The district court recognized their stipulation as "self-executing" and effective under Rule 41(a)(1)(A)(ii).  So it dismissed those three defendants from the case with prejudice as to O'Neal's ability to reassert his claims.

That was error.  As I've explained in Parts I.A and I.B, a plaintiff cannot voluntarily dismiss an FLSA action under Rule 41(a)(1)(A).  Rather, he must use Rule 41(a)(2), and the district court must review and approve any proposed settlement before ordering dismissal.

That said, the second event—the district court's acceptance of the invalid Rule 41(a)(1)(A)(ii) stipulation of dismissal—is not before us in this appeal.[4]  After all, O'Neal did not seek to press his FLSA claims anew in the Supplemental Litigation.

---

[4] O'Neal challenges rulings in a separate, later litigation (the Supplemental Litigation), so his appeal doesn't present the validity of his and the settling defendants' dismissal of the Initial Litigation.  Although O'Neal filed this second, Supplemental Litigation on the same docket as the Initial Litigation, it involves new parties and litigates the existence of a new liability.  That makes the

24-10900              ROSENBAUM, J., Concurring                    11

Still, a district court's acceptance of an invalid Rule 41(a)(1)(A)(ii) stipulation of dismissal in an FLSA action could frustrate the FLSA and create confusion and additional litigation. Below, I explain how.

If we recognized parties' Rule 41(a)(1)(A)(ii) dismissals as effective in cases involving FLSA claims, an employer could seek to throw out (as opposed to validly settling) an employee's renewed FLSA claims under two theories.

First, an employer could invoke claim preclusion. Here, for instance, the parties to the Settlement Agreement purported to dismiss the Initial Litigation with prejudice under Rule 41(a)(1)(A)(ii). And stipulated dismissals with prejudice generally operate as final judgments on the merits that bar a plaintiff from later reasserting those claims. *See Citibank*, 904 F.2d at 1501–02.

Second, an employer could assert the statute of limitations. FLSA claims seeking back wages typically have a statute of limitations of two years. 29 U.S.C. § 255(a). Even the exception, for cases of willful violations, is a limitations period of three years. This case shows how a stipulated dismissal can create a problem. O'Neal alleges he stopped working for any of the settling defendants in January 2019. So when he signed the Settlement Agreement in May 2021, an FLSA claim for back wages already fell outside the general, two-year limitations period. Today, even the longer period for

---

Supplemental Litigation an independent civil action. *See Jackson-Platts v. Gen. Elec. Cap. Corp.*, 727 F.3d 1127, 1134–35 (11th Cir. 2013).

willful FLSA violations has long since run.  And the statute of limitations would stand in the way even if the Rule 41(a)(1) dismissal were made without prejudice.

If available, either alternative could shut down an employee's later FLSA suit.  It wouldn't matter that their out-of-court settlement wasn't itself technically binding.  In practice, then, an employer could "settle[] or compromise[]," *Lynn's Food*, 679 F.2d at 1352, its employee's FLSA back-wage claims without supervision by the Secretary of Labor or judicial scrutiny of the settlement agreement.

But that's exactly the outcome that *Lynn's Food* forbids.  Once again, "Congress made the FLSA's provisions mandatory." *Id.*  So in my view, claim preclusion and the statute of limitations help show why a purported dismissal under Rule 41(a)(1) can't halt an employee's FLSA action that was validly filed.  A Rule 41(a)(1) filing that seeks to do what it cannot is invalid.  *See Perry v. Schumacher Grp. of La.*, 891 F.3d 954, 958 (11th Cir. 2018).  And an invalid Rule 41(a)(1) notice does "not operate[] to terminate the action or divest the district court of jurisdiction to hear subsequently filed motions." *In re Esteva*, 60 F.4th 664, 677 (11th Cir. 2023).  The court "still must address or otherwise dispose of" whatever claims the parties attempted to dismiss.  *Id.* at 678.

So here, the parties' Rule 41(a)(1) stipulation in the Initial Litigation was invalid.  It makes no difference that the district court mistakenly recognized the dismissal of O'Neal's claims against

24-10900               Rosenbaum, J., Concurring               13

American Shaman and the other two parties to the Settlement Agreement.

The upshot is that O'Neal could have moved for reconsideration, sought relief from the judgment, or directly appealed the court's judgment in the Initial Litigation. *See Justice v. United States*, 6 F.3d 1474, 1480 (11th Cir. 1993). Indeed, he may have a viable means of attacking that judgment even now. *See* Fed. R. Civ. P. 60(b)(4)–(6), (c)(1). Were O'Neal to revisit his FLSA claims in the Initial Litigation, Rule 41(a)(1) wouldn't divest the district court of jurisdiction to consider his motion.

But that doesn't change the effect of that original judgment in *this* litigation. If entered by a court with jurisdiction, "even an erroneous judgment is entitled to res judicata effect." *City of Arlington v. FCC*, 569 U.S. 290, 297 (2013); *cf. Justice*, 6 F.3d at 1482.

Still, it is easy enough to avoid these problems and complications. Parties who seek in good faith to settle a mixed FLSA and non-FLSA case should present the court with enough information to ensure that the settlement is not an unfair release of the plaintiff's right to back wages and liquidated damages under the FLSA. To assist in that task, parties may always specify what separate consideration corresponds to various provisions in the contract. (In fact, here, the parties specified one aspect of the consideration: $100 of the Shaman entities' payment to O'Neal was separate consideration for the Settlement Agreement's confidentiality provision. In "mixed" cases, it can be particularly helpful to state clearly which

14                    ROSENBAUM, J., Concurring                    24-10900

portion of a settlement payment corresponds to a plaintiff's FLSA claims.

And district courts can avoid problems by ensuring that they do not accept stipulations of dismissal in actions with FLSA claims without first reviewing and approving the underlying settlement agreement.

★ ★ ★

For the reasons I've explained, parties may not use Rule 41(a)(1) to dismiss an FLSA action. And when presiding over validly filed FLSA litigation, a court must always conduct a *Lynn's Food* review of any settlement of FLSA back-wage claims that parties have reached. Only if the court approves the settlement as fair and reasonable may it then grant dismissal under Rule 41(a)(2).

## II.

Now, I address the jurisdictional question the Majority Opinion discusses in Section II.A.2. O'Neal sought to appeal the magistrate judge's denial of his motion for leave to amend. As the Majority Opinion notes, O'Neal failed to timely object to the district judge about this nondispositive order. Maj. Op. at 17–18.

Under *United States v. Renfro*, O'Neal's failure to object deprives us of jurisdiction over his appeal of that order. 620 F.2d 497, 500 (5th Cir. 1980).[5] In *Renfro*, a criminal defendant waited until

---

[5] All decisions the Fifth Circuit issued by the close of business on September 30, 1981, are binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

after trial to object to a magistrate judge's pretrial ruling on a discovery motion. *Id.* at 499. Our predecessor Court held that, because "[t]he law is settled that appellate courts are without jurisdiction to hear appeals directly from federal magistrates," it had to dismiss that part of the defendant's appeal. *Id.* at 500.

The Court did so based on 28 U.S.C. § 636(b)(1)(A). *See id.* (citing *United States v. Reeds*, 552 F.2d 170, 171 (7th Cir. 1977)). Section 636 (b)(1)(A), in turn, authorizes magistrate judges to make nondispositive pretrial rulings in both criminal *and civil* matters alike. *See* 28 U.S.C. § 636(b)(1)(A).

Under our prior-precedent rule, two things about our ruling in *Renfro* are important. First, of course, our prior-precedent rule requires us "to follow the precedent of the first panel to address the relevant issue, unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court." *Scott v. United States*, 890 F.3d 1239, 1257 (11th Cir. 2018) (quotation marks omitted). In *Renfro*, we held that Section 636(b)(1)(A) does not give us jurisdiction to consider appeals of nondispositive magistrate-judge orders when the litigant didn't timely object to the district judge. We are bound by that holding.

And second, "we must follow the reasoning behind a prior holding if we cannot distinguish the facts or law of the case under consideration." *Id.* Our reasoning in *Renfro* requires the conclusion that *Renfro*'s holding applies in civil and criminal cases alike. Again, *Renfro* based its jurisdictional determination on Section 636(b)(1)(A). And Section 636(b)(1)(A), in turn, applies equally to

civil and criminal matters. So under *Renfro*, the failure to timely object to a magistrate judge's nondispositive ruling—whether in a civil or criminal case—deprives us of jurisdiction to review that ruling.

Despite the fact that *Renfro* binds us to hold that we lack jurisdiction to hear an appeal of a magistrate judge's nondispositive ruling when the appealing litigant failed to timely object—in either a civil or criminal case—a later line of our precedent implicitly assumes that we have jurisdiction in such cases. I refer to that line of precedent as the *Farrow* line because it begins with *Farrow v. West*, 320 F.3d 1235, 1249 n.21 (11th Cir. 2003). That line of precedent describes the litigant's lack of timely objection to a magistrate judge's nondispositive order as *"waiv[ing]* his right to appeal those orders" in the Court of Appeals, based on Federal Rule of Civil Procedure 72(a). *E.g.*, *Smith v. Sch. Bd. of Orange Cnty.*, 487 F.3d 1361, 1365 (11th Cir. 2007) (emphasis added). The Majority Opinion views these precedents as necessarily holding that this "waiver" rule is non-jurisdictional.

Most respectfully, the Majority Opinion is wrong about that. Our precedent requires us to conclude that the *Farrow* line's implicit assumption of jurisdiction is not precedential.

That's so because none of the cases the Majority Opinion cites—and none in the *Farrow* line that I've found—in fact considers whether we have jurisdiction to review the appeal of the magistrate judge's order. Indeed, not a single decision I've been able to find—precedential or not—addresses both *Renfro* and Rule 72(a)

24-10900          ROSENBAUM, J., Concurring          17

and also concludes we have jurisdiction over the unobjected-to nondispositive magistrate-judge order.[6] And "we are not bound by a prior decision's sub silentio treatment of a jurisdictional question." *Okongwu v. Reno*, 229 F.3d 1327, 1330 (11th Cir. 2000); *cf. King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1168 (11th Cir. 2007) ("[T]he prior precedent rule does not extend to implicit jurisdictional holdings.").

So that leaves *Renfro* as the sole line of precedent that addresses jurisdiction when it comes to a litigant's failure to timely object to a magistrate judge's nondispositive ruling. In other words, contrary to the Majority Opinion's conclusion, there's no conflict in our binding precedent. Rather, *Renfro* simply requires

---

[6] I readily concede our unpublished opinions aren't precedential, so I don't rely on them. Still, in the interest of presenting a complete survey of the Eleventh Circuit landscape on this issue, I note that every time we've expressly considered both Rule 72(a) and *Renfro*—at least ten in all—we've held that *Renfro* controls and we lack jurisdiction. *See, e.g.*, *Cano ex rel. Morejon v. 245 C&C, LLC*, No. 23-12413, 2025 WL 3727880, at *2 (11th Cir. Dec. 23, 2025); *Brown v. Doe*, No. 24-10550, 2025 WL 2911038, at *8 (11th Cir. Oct. 14, 2025); *Gross v. United Parcel Serv.*, No. 23-10808, 2024 WL 1299107, at *4 (11th Cir. Mar. 27, 2024); *Nestor v. VPC3 II, LLP*, No. 23-10331, 2024 WL 1107412, at *2 (11th Cir. Mar. 14, 2024); *DiPietro v. Cooper*, No. 21-12874, 2023 WL 9018423, at *5 (11th Cir. Dec. 29, 2023); *Shaw v. Calhoun State Prison*, No. 21-11223, 2022 WL 17333081, at *3 (11th Cir. Nov. 30, 2022); *Moore v. Ramos*, No. 20-13435, 2021 WL 2947788, at *1 (11th Cir. July 14, 2021); *Rhiner v. Sec'y, Fla. Dep't of Corr.*, 817 F. App'x 769, 779–80 (11th Cir. 2020); *Leonard v. Florida*, 732 F. App'x 859, 861 (11th Cir. 2018); *Weaver v. Mateer & Harbert, P.A.*, 523 F. App'x 565, 567 (11th Cir. 2013).

us to conclude that we lack jurisdiction.  That is the beginning and end of the analysis.

But even if we ignored the fact that Rule 72(a) cases that don't address jurisdiction necessarily aren't precedential on the jurisdictional issue, we would still be required to follow *Renfro*.  True, assuming we actually had conflicting precedent (as I've explained, we don't), we would be "obligated, if at all possible, to distill from [it] a basis of reconciliation and to apply that reconciled rule." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993).  But when we can't fairly harmonize conflicting lines of precedent, we must follow the earliest-decided precedent.  *Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1231 (11th Cir. 2020).

And here, even accepting the Majority Opinion's incorrect view that the *Farrow* line of precedent is binding on the jurisdictional question in civil cases, we can't fairly reconcile it with *Renfro*. That's so because, as I've noted, *Renfro* bases its reasoning on Section 636(b)(1)(A).  That statute, in turn, applies equally to a magistrate judge's civil and criminal rulings.  So to the extent the *Farrow* line of cases suggests the Court has jurisdiction in civil cases, that line of precedent directly conflicts with *Renfro*.

That the *Farrow* line bases its "waiver" rule on Federal Rule of Civil Procedure 72(a) doesn't take care of the conflict, either.  *See Farrow*, 320 F.3d at 1249 n.21.  Sure, as the Majority Opinion correctly observes, *Renfro* "has nothing to say about Federal Rule of Civil Procedure 72(a)."  Maj. Op. at 16.  But Rule 72(a) has nothing to say about jurisdiction.  After all, "'[it] is axiomatic that the

24-10900          ROSENBAUM, J., Concurring          19

Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction.'" *Parrish v. United States*, 605 U.S. 376, 387 n.3 (2025) (citation omitted); *accord* Fed. R. Civ. P. 82 ("These rules do not extend or limit the jurisdiction of the district courts or the venue of actions in those courts."). Rather, "[s]ubject matter jurisdiction is conferred and defined by statute." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).

In contrast, *Renfro* speaks directly to jurisdiction. And the statute that *Renfro* interprets authorizes magistrate judges to make nondispositive pretrial rulings in civil and criminal matters alike. *See* 28 U.S.C. § 636(b)(1)(A). We are bound to follow *Renfro*'s reasoning—no part of which is unique to criminal law.

The Majority Opinion also suggests that the Federal Rules of Criminal Procedure may have somehow "superseded" *Renfro*. Maj. Op. at 17. That fails, too. "Only Congress may determine a lower federal court's subject-matter jurisdiction." *Kontrick v. Ryan*, 540 U.S. 443, 452 (2004). And just like in the civil context, the Supreme Court has taken a "consistent position that rules of practice and procedure, such as the Federal Rules of Criminal Procedure at issue here, 'do not create or withdraw federal jurisdiction.'" *United States v. Lee*, 77 F.4th 565, 578 (7th Cir. 2023) (quoting *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 370 (1978)).

Indeed, we've already confronted this question. Federal Rule of Criminal Procedure 59 came into effect in 2005. *See United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009). Similar to its civil analogue (Rule 72(a)), Rule 59(a) specifies that "[f]ailure to

object [to a magistrate judge's nondispositive ruling] . . . waives a party's right to review." Fed. R. Crim. P. 59(a).

Four years after Rule 59(a) came into effect, in *Schultz*, we faced an appeal of a magistrate judge's nondispositive order that the defendant had not objected to in district court. *Id.* at 1360. If Rule 59 had somehow expanded our jurisdiction, the *Schultz* panel could have considered the merits of the appeal. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 274 (1994). But instead we dismissed under *Renfro* for lack of jurisdiction. Our conclusion then is a good reminder now: "[W]e are bound to follow *Renfro* under our prior panel precedent rule until this Court sitting en banc or the Supreme Court overrules it." *Schultz*, 565 F.3d at 1359.

The Majority Opinion observes that "it is not entirely clear that *Renfro* remains good law." Maj. Op. at 16. I agree that *Renfro* is likely wrong. But no Supreme Court precedent is directly on all fours with *Renfro*, no statute has abrogated *Renfro*, and to date, we have not overruled *Renfro* en banc. I understand the frustration of having to apply precedent that we think is wrong, but "[u]nder our prior precedent rule, a panel cannot overrule a prior one's holding even though convinced it is wrong." *United States v. Steele*, 147 F.3d 1316 (11th Cir. 1998) (en banc).

This is not the first time a member of our Court has thought our precedent wrong. But our prior-precedent rule has no exception in such cases. If it did, the exception would swallow the rule. *See Smith v. GTE Corp.*, 236 F.3d 1292, 1302 (11th Cir. 2001). So we

deal with precedent we think wrong by applying it faithfully and then considering the precedent en banc.

For instance, take our recent decision in *Burt v. President of University of Florida*, 151 F.4th 1334 (11th Cir.), *reh'g en banc granted, opinion vacated*, 153 F.4th 1368 (11th Cir. 2025). There, too, a panel of our court considered a jurisdictional question. We reasoned that, if we were writing on a clean slate, the appellant would likely be correct that we should consider his time to appeal to start running after his period to amend his complaint expires. *Id.* at 1338. That would have made his appeal timely. *Id.* We noted, too, our existing rule is admittedly "idiosyncratic, "sits uneasily" with Supreme Court precedent, and is in tension with "the now-revised Federal Rules of Civil Procedure." *Id.* at 1336, 1338. Nevertheless, we faithfully applied our prior panel precedent. *Id.* at 1339. The full court then elected to take the case en banc to reconsider our earlier precedent.

As this example shows, our Circuit has a method for revisiting past precedent: en banc rehearing.[7] Here, the Majority

---

[7] *Renfro*'s jurisdictional rule may well be an en banc-worthy issue in an appropriate case. Of course, this case isn't a natural vehicle for such review because the outcome would be the same either way. But in a future case, the issue may well make a difference, given that we apply limited exceptions to many waiver rules. But even if it doesn't, there's no "this issue may not soon present itself where it is outcome-determinative" exception to the prior-precedent rule. So we must follow the rule, even if we think our precedent is wrong and we think we won't be able to easily correct it en banc. After all, we don't get to pick and choose when to abide by the prior-precedent rule.

22                    ROSENBAUM, J., Concurring                    24-10900

Opinion's view of the *Farrow* line of precedent is irreconcilably in conflict with *Renfro*, and *Renfro* precedes the *Farrow* line. So rehearing en banc is our only option to depart from *Renfro* and exercise jurisdiction to review a magistrate judge's nondispositive order even if the appellant didn't timely object to the district judge. Because the Majority Opinion instead disregards *Renfro*, and in so doing tramples our prior-precedent rule, I concur in only the judgment affirming dismissal of this part of O'Neal's appeal.